```
                    UNITED STATES DISTRICT COURT
                        DISTRICT OF NEW JERSEY
```

```
KEIDRON ALEXANDER,                  No. 1:17-cv-6418 (NLH/KMW)

            Plaintiff,              **OPINION**

     v.

BOROUGH OF PINE HILL, BOROUGH
OF PINE HILL POLICE
DEPARTMENT, MARY EVA
COLALILLO, DANA R. PERTONE,
GRACE MACAULAY, PHILLIP
MARINO, DEREK KRAMER, and
CAMDEN COUNTY,

            Defendants.
```

**APPEARANCES**:

TONI L. TELLES
LAW OFFICES OF ERIC A. SHORE, P.C.
4 ECHELON PLAZA
201 LAUREL ROAD
8TH FLOOR
VOORHEES, NJ 08043
    On behalf of Plaintiff

GRAHAM FAVILLE BAIRD
LAW OFFICES OF ERIC A. SHORE, P.C.
TWO PENN CENTER
1500 J.F.K. BOULEVARD
SUITE 1240
PHILADELPHIA, PA 19102
    On behalf of Plaintiff

MELIHA ARNAUTOVIC
ASHLEY GAGNON
OFFICE OF THE ATTORNEY GENERAL OF NJ
25 MARKET ST, 7TH FL, WEST WING
PO BOX 116
TRENTON, NJ 08625
    On behalf of Defendants Mary Eva Colalillo, Dana R.
    Pertone, and Grace Macaulay

**HILLMAN, District Judge**

This matter concerns various § 1983 and New Jersey Civil Rights Act (NJCRA) claims arising from Plaintiff Keidron Alexander's January 2016 arrest. Before the Court is a Motion to Dismiss filed by Defendants Mary Eva Colalillo, Dana Pertone, and Grace MacAulay. For the reasons that follow, the Court will grant Defendants' motion.

**I.**

The Court takes its facts from Plaintiff's July 7, 2017 Second Amended Complaint. On the morning of January 23, 2016, Plaintiff and Averie Jones, Plaintiff's girlfriend who lived with him at the time, engaged in a physical altercation. At no point during the altercation did Plaintiff touch Jones or physically threaten her. During the altercation, Jones poured a pot of boiling water on Plaintiff, resulting in first- and second-degree burns on Plaintiff's back, head, and ear.

In response, Plaintiff stated he was going to call the police. However, Jones called the police before Plaintiff could. Defendant Officer Marino arrived on the scene first in response to the 911 call. Marino recognized that Jones displayed no signs of physical injury on his arrival. Marino learned that Plaintiff had been scalded with hot water.

A Pine Hill Police Officer observed burn injuries to Plaintiff's face and relayed to Marino that Plaintiff's skin

turned pink and the condition of his neck, ear, and face. Marino acknowledged Plaintiff's injuries. It was recognized that Plaintiff's injuries were so serious that they warranted calling an ambulance.[1]

Marino asked Jones several times whether she required medical attention, to which Jones responded she did not. Neither Marino nor any other Pine Hill Police Officer spoke with Plaintiff at the scene to get his version of events. Defendant Officer Kramer escorted Plaintiff to Kennedy Hospital. Marino never appeared at the hospital to take a statement from Plaintiff.

According to Marino, it was not a rare occurrence to arrive at the scene of a domestic violence incident where both parties claim to be a victim. Despite the fact that Marino was aware that Plaintiff exhibited signs of injury in a domestic setting and that Jones exhibited no signs of physical injury, Marino, Kramer, the Borough of Pine Hill, and the Borough of Pine Hill Police Department issued a Statement of Probable Cause and warrant against Plaintiff, charging him with assault, N.J.S.A. 2C:12-1(a)(1), and aggravated assault, N.J.S.A. 2C:12-1(b)(7).

---

[1] It is not clear to the Court from the factual allegations in the Second Amended Complaint whether an ambulance was ultimately called.

Plaintiff was placed under arrest by Kramer upon leaving the hospital. Jones was not arrested.

Plaintiff was detained at the Camden County Correctional Facility until January 25, 2016. The charges against Plaintiff were eventually dismissed, and Plaintiff was granted a final restraining order against Jones.

Plaintiff's July 7, 2017 Second Amended Complaint asserts nine counts: (1) a Fourth Amendment false arrest claim under § 1983; (2) a Fourth Amendment malicious prosecution claim under § 1983; (3) a Fourteenth Amendment selective enforcement claim under § 1983; (4) a Fourteenth Amendment civil rights violations claim under § 1983; (5) a Monell[2] claim under § 1983; (6) a false arrest claim under the NJCRA; (7) a malicious prosecution claim under the NJCRA; (8) a sex discrimination claim under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1[3]; and (9) a claim for equitable relief. This matter was removed to the District of New Jersey on August 25, 2017. On October 13, 2017, Defendants Colalillo, Pertone, and MacAulay filed this Motion to Dismiss.

---

[2] Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

[3] Count VIII is not asserted against the moving defendants. Thus, all counts against the moving defendants arise under either § 1983 or the NJCRA.

**II.**

This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff brings claims under 42 U.S.C. § 1983. The Court exercises supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

**III.**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.,

5

40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (alterations in original) (citations omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its

face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

**IV.**

Plaintiff is suing Colalillo, Pertone, and MacAulay in their individual and official capacities. The Second Amended Complaint identifies Colalillo as "the Camden County Prosecutor," Pertone as "the First Assistant Camden County Prosecutor," and MacAulay as "the Deputy First Assistant Camden County Prosecutor." The Court turns first to the claims against Defendants in their official capacities.

**A. Official Capacity**

§ 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

"[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). "The New Jersey Civil Rights Act ('NJCRA'), like § 1983, grants a cause of action against 'a person acting under color of law.'" Evans v. City of Newark, No. 14-00120, 2016 WL 2742862, at *8 (D.N.J. May 10, 2016) (quoting N.J.S.A. 10:6-2); accord Didiano v. Balicki, 488

7

F. App'x 634, 638 (3d Cir. 2012) (stating that the definition of the word "person" under the NJCRA "does not include the State or defendants which are the functional equivalent of the State").

The moving defendants here are county prosecutors. "New Jersey county prosecutors' offices sit uneasily astride the division between State and local entities. Sometimes they act in one capacity, and sometimes in the other . . . ." Evans, 2016 WL 2742862, at *9. "When county prosecutors engage in classic law enforcement and investigative functions, they act as officers of the State." Coleman v. Kaye, 87 F.3d 1491, 1505 (3d Cir. 1996). However, "[w]hen county prosecutors perform administrative functions 'unrelated to the duties involved in criminal prosecution,' . . . they act as county officials." Estate of Lagano v. Bergen Cty. Prosecutor's Office, 769 F.3d 850, 855 (3d Cir. 2014) (quoting Coleman, 87 F.3d at 1505-06).

Plaintiff's only factual allegations regarding the three prosecutor defendants relate to a failure "to properly establish training, supervision or disciplinary policies which would have prevented or discouraged Camden County and/or Borough of Pine Hill employees from arresting one party based on that party's sex." "Training and policy decisions that require legal knowledge and discretion are related to prosecutorial functions and are unlike administrative tasks concerning personnel." Hyatt v. County of Passaic, 340 F. App'x 833, 836-37 (3d Cir.

2009) (Eleventh Amendment context); accord Pacheco v. Passaic Police Dep't, No. 12-6929, 2014 WL 1545221, at *6 (D.N.J. Apr. 2, 2014) (holding, in the Eleventh Amendment context, that "[t]raining and policy decisions that require legal knowledge and discretion are related to prosecutorial functions and are unlike administrative tasks concerning personnel"); Brown v. City of Camden (In re Camden Police Cases), No. 10-4757, 2011 WL 3651318, at *6 (D.N.J. Aug. 18, 2011) (finding, in the Eleventh Amendment context, that "several cases . . . have concluded[] that supervising and training police officers is a prosecutorial function").

The Court finds these cases instructive. The supervision and training of a prosecutor on "when it is appropriate to place a person under arrest," (Compl. ¶ 55), clearly involves legal knowledge and discretion related to a core prosecutorial function. The Court finds Defendants are not "persons" under § 1983 or the NJCRA.[4]

**B. Individual Capacity**

"Dismissal of official-capacity claims, however, is not the end of the story" where there are claims directed against

---

[4] In its moving papers, Defendants state the standard for both a 12(b)(1) motion and a 12(b)(6) motion. Defendants only argue Defendants are not persons under § 1983, not Eleventh Amendment immunity, which would require dismissal pursuant to Rule 12(b)(1).

defendants in their individual capacities in addition to their official capacities. See Evans, 2016 WL 2742862, at *10. "Individuals named as defendants in their personal capacities are amenable to suit as 'persons.'" Id. (quoting Lagano, 769 F.3d at 856). "It does not matter that they happen to be government officials, or that the acts for which they are sued happen to be official acts. Their amenability to suit flows solely from the personal capacity in which they are sued." Id. (citation omitted) (citing Hafer v. Melo, 502 U.S. 21, 27 (1991)). "When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses," such as absolute immunity or qualified immunity. Kentucky v. Graham, 473 U.S. 159, 166-67 (1985).

Defendants assert the defense of absolute prosecutorial immunity. "Prosecutorial immunity erects a liability shield, not unlimited in breadth, but virtually impenetrable." Evans, 2016 WL 2742862, at *10.

> Prosecutors are subject to varying levels of official immunity. Absolute immunity attaches to all actions performed in a "quasi-judicial" role. This includes activity taken while in court, such as the presentation of evidence or legal argument, as well as selected out-of-court behavior "intimately associated with the judicial phases" of litigation. By contrast, a prosecutor acting in an investigative or administrative capacity is protected only by qualified immunity. In addition there may be instances where a prosecutor's

behavior falls completely outside the prosecutorial role. In that case, no absolute immunity is available.

Kulwicki v. Dawson, 969 F.2d 1454, 1463 (3d Cir. 1992) (citations omitted) (quoting Imbler v. Pachtman, 424 U.S. 409, 430 (1976)).

"Prosecutors have absolute immunity from suit under § 1983 when carrying out prosecutorial functions." Hyatt v. County of Passaic, 340 F. App'x 833, 837 (3d Cir. 2009); see also Williams v. Vanderud, No. 16-1245, 2017 WL 4274265, at *11 (D.N.J. Sept. 26, 2017) ("The NJCRA is therefore generally interpreted nearly identically to § 1983 and claims under the NJCRA are generally coterminous with and subject to the same defenses and immunities as those brought under § 1983."). In Hyatt, the Third Circuit found prosecutor's office officials "have absolute immunity for their training decisions, policies, and procedures regarding the existence of probable cause and regarding child witnesses of sexual abuse, which involve legal knowledge and discretion." Hyatt, 340 F. App'x at 838. "Courts have held that training and supervisory activities are prosecutorial functions rather than administrative functions." Pitman v. Ottehberg, No. 10-2538, 2011 WL 6935274, at *6 (D.N.J. Dec. 30, 2011).

> For example, in Van de Kamp v. Goldstein, 555 U.S. 335, 344 (2009), the Supreme Court stated that prosecutors involved in supervision or training enjoy absolute immunity because such an administrative obligation is "directly connected with the conduct of a trial." By contrast the administrative duties concerning workplace

11

      hiring, payroll administration, or maintenance of
      physical facilities would not be activities for which
      the State would provide a defense and indemnification.

Id.

All of Plaintiffs' claims against moving defendants arise from their alleged failure to supervise and train. The Court finds the specific training at issue here is similar in its function to training "regarding the existence of probable cause," like in Hyatt. 340 F. App'x at 838. The Court finds Defendants have absolute immunity under the facts of this case, and the claims against them in their individual capacities must be dismissed as well.

An appropriate Order will be entered.


Date: May 15, 2018           s/ Noel L. Hillman
At Camden, New Jersey     NOEL L. HILLMAN, U.S.D.J.