**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

KEIDRON ALEXANDER,

               Plaintiff,

     v.

BOROUGH OF PINE HILL et al.,

              Defendants.

No. 1:17-cv-6418 (NLH/KMW)

**OPINION**

---

**APPEARANCES**:

TONI L. TELLES
LAW OFFICES OF ERIC A. SHORE, P.C.
4 ECHELON PLAZA
201 LAUREL ROAD, 8TH FLOOR
VOORHEES, NJ 08043

GRAHAM FAVILLE BAIRD
LAW OFFICES OF ERIC A. SHORE, P.C.
TWO PENN CENTER
1500 J.F.K. BOULEVARD, SUITE 1240
PHILADELPHIA, PA 19102

     *Attorneys for Plaintiff Keidron Alexander.*

CHRISTOPHER M. WOLK
BLUMBERG & WOLK, LLC
158 DELAWARE STREET
PO BOX 68
WOODBURY, NJ 08906

     *Attorney for Defendants Borough of Pine Hill, Borough of Pine Hill Police Department, Phillip Marino, and Derek Kramer.*

**HILLMAN**, District Judge

     This matter arises from a domestic violence incident involving Plaintiff Keidron Alexander and his then-girlfriend, after which he was arrested and charged with simple and

aggravated assault.  Plaintiff brings a series of claims under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA") for violations of his Fourth and Fourteenth Amendment rights, as well as a claim of sex discrimination in violation of the New Jersey Law Against Discrimination ("NJLAD") and a claim for equitable relief.  Presently before the Court is Defendants' motion for summary judgment, (ECF No. 65), which Plaintiff has opposed.  (ECF No. 71).  For the reasons that follow, Defendants' motion will be granted as to each of Plaintiff's claims.

## Background

The Court takes its facts from the parties' statements of material fact submitted pursuant to Local Civil Rule 56.1(a) and their related exhibits.  On the morning of January 23, 2020, Borough of Pine Hill police officers Phillip Marino and Derek Kramer were dispatched to the home of Plaintiff and his then-girlfriend, Averie Jones, in response to a 9-1-1 call placed by Jones.

Officer Marino was the first to arrive on the scene, at approximately 10:19 AM.  (ECF 65-5, Def. Ex. B. at 10:19:00). Upon arriving, Officer Marino was met at the door by Jones. Jones immediately informed him that Plaintiff and her had been arguing the previous evening, during which Plaintiff had "grabbed me by my neck, somehow hit me on my head," and that she

2

had previously had a lump on her head of which she had taken a picture. (<u>Id</u>. at 10:19:25-10:19:35). She then told Marino that the fighting had begun again that morning; at this point, Marino acknowledged Plaintiff at the top of the stairs, who stated that Jones had "just poured boiling hot water" on him and burned his face and body. (<u>Id</u>. at 10:19:35-10:19:50). Jones admitted that she had done so, saying "he attacked me on the steps, and I just responded." (<u>Id</u>. at 10:19:50-11:00:00). Marino then asked both parties if they needed medical attention, to which Plaintiff responded that he did not know if he did and Jones stated again that she had been hit on the head. (<u>Id</u>. at 10:20:10-10:20:17).

Shortly afterwards, other officers arrived on the scene, and Marino asked Officer Kramer to go speak to Plaintiff while he talked to Jones in another room. (<u>Id</u>. at 10:21:20). Marino then asked Jones to explain what had happened the previous evening. Jones told him that she had followed Plaintiff to the bathroom after he got upset at her for asking why he had come home in a bad mood, and he shut the door in her face; at that point, she "opened [the door] back up, and then his hands wrap around my throat." (<u>Id</u>. at 10:21:57-10:22:20). Marino asked her whether she had become unconscious or had trouble breathing, to which Jones responded no, but that Plaintiff had put pressure on her neck and that she was both sore in that area and having trouble swallowing. (<u>Id</u>. at 10:22:20-10:22:35).

Marino next asked Jones to describe what had happened that morning.  Jones told him that the two had begun arguing again about the events of the previous night, and then Plaintiff had picked up Jones's UGG boots, which she was not wearing at the time, and begin hitting her with them.  (Id. at 10:22:35-10:23:10).  According to Jones, she then picked up a can of "Clorox spray," which he grabbed from her hand before she could spray it at him.  (Id. at 10:23:10-10:23:18).

Video from Officer Kramer's body camera shows that at this time he was talking to Plaintiff and hearing his story.  (ECF No. 65-6, Def. Ex. C at 10:23:10).  Plaintiff told Kramer that the two had been arguing, and that she had picked up a bottle of Lysol to spray at him and been throwing things at him, and then she had gone into the kitchen, returned with the pot of boiling water, and dumped it on him while he was on the stairs with his back turned.  (Id. at 10:23:10-10:24:10).

After the officers convened and noted that both parties had acknowledged she had thrown water on him, and that there was a strangulation allegation regarding the previous evening, Marino then walked up the stairs and asked Plaintiff to explain to him what had happened the previous evening.  (ECF No. 65-5, Ex. B. at 10:23:30-10:24:33).  Plaintiff told Marino that, while he had been trying to take a shower after coming home, Jones had been kicking the door and had apparently damaged it or kicked it off

4

its hinges.  (Id. at 10:24:33-10:25:05).  Asked by Marino what
happened next, Plaintiff responded "pretty much nothing," said
he let Jones damage her own possessions and then went and slept
downstairs, and did not reference any further physical violence.
(10:25:20-10:25:45).  Asked next whether he had hit Jones with
her shoes and what provoked her to throw the water on him,
Plaintiff denied having hit her and told Marino that he had said
something about her mother.  (Id. at 10:25:50-10:26:05).

The officers then reconvened to discuss the allegations.
Marino described Plaintiff's story, noting that she was
complaining of pain in her throat, but that he did not notice
any mark on her face at that point.  (Id. at 10:26:20-10:26:55).
After it was noted that Plaintiff's skin was peeling off, Marino
called in medical assistance.  (Id. at 10:26:55-10:27:20).
Later in the conversation, another officer can be heard asking
"is she the victim from last night and he's the victim from
today," which Kramer responded to by saying "that's basically
what it sounds like;" Marino, however, responded by stating that
"he's going to need to be under arrest . . . mandatory arrest."
(Id. at 10:29:40-10:31:00).  The officers went on to discuss the
fact that there are two different stories on each incident, and
that they could take Plaintiff to sign a complaint as well if he
wanted to — they eventually agreed that Marino would take Jones
to the station to take her statement and then call the

Prosecutor's Office.  During the officers' conversation, Marino turned to Jones and asked her "how bad is your throat hurting you," to which Ms. Jones again told him that "it hurts to swallow" and had been since the previous night, and that there had been a mark on her eye, but it had since "gone down."  (Id. at 10:28:55-10:29:36).

After several minutes of administrative discussions, Marino then asked Jones about Plaintiff's claim that she had kicked in the door; Jones stated that she hadn't, and that the damage to the door was from Plaintiff grabbing her neck and knocking her into the door.  (Id. at 10:37:40-10:37:48).  Shortly after, Marino told another officer that he was determining Plaintiff was the "aggressor" for both incidents.  (Id. at 10:28:50-10:39:00).

A few minutes later, after Plaintiff had left to receive medical treatment, Marino went upstairs to look at the bathroom where Jones said she had been grabbed by her throat and to check the damage to the door.  The bodycam video shows clear damage to the door, and Jones pointed out other items that had been knocked over in the bedroom, some of which she said she knocked over after she tripped trying to get away from Plaintiff, and some of which she said Plaintiff must have knocked over himself.  (Id. at 10:41:25-10:42:45).  As Marino then waited for Jones to get her and her daughter prepared to go to the station, she can

be heard talking to someone on the phone, repeating the same
story regarding what had happened that morning that she had told
Marino earlier.  (Id. at 10:43:15-10:43:40).

Marino then drove Jones and her daughter to the police
station, where he took her sworn statement.  At the station,
Jones first told her story, the details of which were the same
as what she had told Marino at her home, (ECF No. 65-7, Def. Ex.
D at 01:50-04:50), with the additional claim that Plaintiff had
followed her into the kitchen after hitting her with her boots.
(Id. at 04:35-04:50).  Marino then followed up with a series of
questions.  Asked by Marino, Jones again stated that Plaintiff
had wrapped his hands around her neck and applied pressure, and
then stated that "while his hands were around my neck," she did
have trouble breathing.  (Id. at 05:00-05:15).  She then told
Marino that she was still having trouble swallowing, that she
had noticed while brushing her teeth that morning that she was
"spitting blood," and that she was very sore towards the back of
her jaw.  (Id. at 05:20-05:41).  The parties then discussed a
picture Plaintiff had provided to Marino, (ECF No. 65-8, Def.
Ex. E), which Marino stated showed a small contusion above her
eye.  (ECF No. 65-7, Def. Ex. D at 05:50-06:15).

Marino then asked her "what made you throw the hot water
today," to which Jones responded "because he was attacking me
with my shoes in my face, my glasses were off my face and

7

somewhere on the floor, and he was just hitting me in my face. I'm going into the kitchen, and he's behind me yelling and stuff, and it just was a reaction." (Id. at 07:38-07:53). Finally, asked whether she feared for her safety at that time, Jones stated "I did. Yes, I did." (Id. at 07:53-07:56).

At some point that day, after taking Jones's statement, Marino drafted a Statement of Probable Cause, and a Complaint-Warrant for the arrest of Plaintiff was issued and signed by Municipal Court Judge Charles Shimberg for both simple and aggravated assault. (ECF No. 65-9 and 65-10, Def. Ex. F and G). That same day, Jones applied for and was granted a Temporary Restraining Order ("TRO") against Plaintiff, (ECF No. 65-1, Def. SOMF at ¶ 33), and Plaintiff was arrested and charged with both simple and aggravated assault. (Id. at ¶ 35). Two days later, Plaintiff went into the police station, gave a sworn statement, and signed a Complaint-Summons against Jones for simple assault. (Id. at ¶¶ 45-48). Plaintiff later applied for, and was granted, a TRO against Jones. (ECF No. 71-1, Pl. SOMF at ¶ 76).

Plaintiff was never convicted of, nor did he plead guilty to, either charge. (Id. at ¶ 77). Both Plaintiff and Jones eventually appeared before a state court judge for their TRO requests; at that hearing, the judge granted Plaintiff a Final Restraining Order and denied Jones's. (Id. at ¶ 85).

Plaintiff eventually filed a lawsuit in the Superior Court
of New Jersey on December 19, 2016, alleging a number of claims
based on his arrest and the charges filed against him.  After
the state court dismissed certain claims and two amended
complaints were filed, the action was eventually removed to this
Court on August 25, 2017.  (ECF No. 1).  The second amended
complaint before the Court at that stage also named the
prosecutors involved in charging Plaintiff; those prosecutors
filed a motion to dismiss, and the Court dismissed all claims
against them on the basis of absolute immunity.  (ECF No. 22).
Plaintiff was given leave to file his Third Amended Complaint,
which he did on December 3, 2019.  (ECF No. 59).  While that
complaint originally named the County of Camden as a defendant,
the parties agreed to dismiss the county, leaving Marino,
Kramer, the Borough of Pine Hill, and the Borough of Pine Hill
Police Department as the only remaining defendants.  (ECF No.
63).

As to those remaining defendants, Plaintiff's Third Amended
Complaint asserts nine counts: (1) a Fourth Amendment false
arrest claim under § 1983; (2) a Fourth Amendment malicious
prosecution claim under § 1983; (3) a Fourteenth Amendment
selective enforcement claim under § 1983; (4) a Fourteenth
Amendment "civil rights violations" claim under § 1983; (5) a
Monell claim under § 1983; (6) a false arrest claim under the

NJCRA; (7) a malicious prosecution claim under the NJCRA; (8) a sex discrimination claim under the NJLAD; and (9) a claim for equitable relief.  On March 27, 2020, the remaining Defendants filed their presently pending motion for summary judgment.  (ECF No. 65).

## Discussion

### I.   Subject Matter Jurisdiction

The Court has original federal question jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, and has supplemental jurisdiction over the New Jersey state law claims pursuant to 28 U.S.C. § 1367(a).

### II.  Legal Standard for Summary Judgment

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing

substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

## III. <u>Analysis</u>

Although Plaintiff's Third Amended Complaint includes nine counts, his claims can be broken down into three general

categories: (1) claims under § 1983 and the NJCRA for violations of Plaintiff's constitutional rights; (2) a claim for sex discrimination in violation of the NJLAD; and (3) a claim for equitable relief.  Defendants move for summary judgment on all counts.  For the reasons that follow, the Court will grant Defendants' motion for summary judgment.

**A. <u>Plaintiff's Claims under § 1983 and the NJCRA</u>**

Plaintiff has brought his claims for false arrest and malicious prosecution pursuant to both 42 U.S.C. § 1983 and the NJCRA, and his claims for selective enforcement and civil rights violations under § 1983.  Section 1983 is not a source of substantive rights, but provides a vehicle for vindicating the violation of other federal rights.  <u>Graham v. Connor, 490 U.S. 386, 393-94 (1989)</u>.  Section 1983 provides in relevant part:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

To state a claim for relief under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed or caused by a person acting under color of state law. <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Piecknick v.</u>

12

Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).  The NJCRA, N.J.S.A. 10:6-1 et seq., was modeled after § 1983 and creates a state law cause of action for violation of an individual's federal and state constitutional rights.  Owens v. Feigin, 947 A.2d 653 (N.J. 2008).  The NJCRA is interpreted analogously to § 1983. Norman v. Haddon Township, No. 14-cv-06034-NLH-JS, 2017 WL 2812876, at *4 (D.N.J. 2017).

Defendants here concede that Marino and Kramer were acting under color of state law.  Instead, Defendants move for summary judgment on two general grounds: (1) that Plaintiff cannot successfully state any of his claims because probable cause existed for his arrest and charging and he has failed to provide any evidence of sex discrimination, and (2) that they are entitled to both qualified immunity and state-law specific immunity for their actions in arresting and charging Plaintiff.

"Qualified immunity shields government officials from personal liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Paszkowski v. Roxbury Twp. Police Dep't, No. 13-7088, 2014 WL 346548, at *2 (D.N.J. Jan. 30, 2014), and applies the same to claims under both § 1983 and the NJCRA.  Wright v. City of Philadelphia, 409 F.3d 595, 599 (3d Cir. 2005); Brown v. State, 230 N.J. 84, 98 (2017).  New Jersey's Domestic Violence Act

13

similarly provides for specific immunity for law enforcement officers' actions taken during domestic violence investigations, stating that:

> "A law enforcement officer . . . shall not be held liable in any civil action brought by any party for an arrest based on probable cause, enforcement in good faith of a court order, or any other act or omission in good faith under this act." N.J.S.A. 2C:25-22.

In cases where officers assert qualified immunity based on their reliance on a court-issued warrant, they are generally entitled to it unless "on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue." Reedy v. Evanson, 615 F.3d 197, 224 (3d Cir. 2010) (citing Malley v. Briggs, 475 U.S. 335, 341 (1986)). Defendants, however, do not rely on or reference the existence of a warrant for Plaintiff's arrest in moving for summary judgment; instead, they argue only that they are entitled to qualified and specific immunity because either probable cause existed as a matter of law, or they had an objectively reasonable, good faith belief that it did. Accordingly, Defendants' two arguments for summary judgment overlap into one central question: did Officers Marino and Kramer have probable cause to arrest and charge Plaintiff, or at least a reasonable, good faith belief that probable cause existed, based on the evidence available to them on January 23, 2016.

14

## 1. **Plaintiff's False Arrest and Malicious Prosecution Claims**

The Court turns first to Plaintiff's false arrest and
malicious prosecution claims.  To state a claim for false arrest
under either § 1983 or the NJCRA, "a plaintiff must establish:
(1) that there was an arrest; and (2) that the arrest was made
without probable cause." James v. City of Wilkes-Barre, 700
F.3d 675, 680 (3d Cir. 2012); Schirmer v. Penkethman, No. CIV.
10-1444, 2012 WL 6738757, at *8 (D.N.J. Dec. 31, 2012)
(describing false arrest claims under New Jersey law).  To
prevail on a malicious prosecution claim under either statute,
"a plaintiff must show that: (1) the defendants initiated a
criminal proceeding; (2) the criminal proceeding ended in the
plaintiff's favor; (3) the proceeding was initiated without
probable cause; (4) the defendants acted maliciously or for a
purpose other than bringing the plaintiff to justice; and (5)
the plaintiff suffered deprivation of liberty consistent with
the concept of seizure as a consequence of a legal proceeding."
McKenna v. City of Philadelphia, 582 F.3d 447, 461 (3d Cir.
2009); Ianuale v. Keyport Township, No. 15-8256, 2016 WL
5955527, at *5 (D.N.J. Oct. 13, 2016) (listing same factors for
NJCRA malicious prosecution claims) (citing LoBiondo v.
Schwartz, 970 A.2d 1007, 1022 (N.J. 2009).

As described above, the central question for the Court is
whether probable cause existed to arrest and charge Plaintiff.

15

Probable cause "exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. New Jersey State Police, 71 F.3d 480, 482 (3d Cir. 1995). For false arrest claims, courts must objectively assess whether, at the time of the arrest and based upon the facts known to the officer, probable cause existed "as to any offense that could be charged under the circumstances." Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005) (quoting Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994)). Malicious prosecution claims, however, may succeed even if probable cause existed for one charge, if there was not probable for another. Johnson v. Knorr, 477 F.3d 75, 85 (3d Cir. 2007).

Importantly, "[p]robable cause does not require that an officer's beliefs 'were, in retrospect, accurate' but rather looks to whether their beliefs were 'not unreasonable in light of the information the officers possessed at the time.'" Damico v. Harrah's Philadelphia Casino & Racetrack, 674 F. App'x. 198, 202 (3d Cir. 2016) (quoting Wright v. City of Philadelphia, 409 F.3d 595, 603 (3d Cir. 2005)). The existence of probable cause is ordinarily a factual issue for the jury. See Halsey v. Pfeiffer, 750 F.3d 273, 300 (3d Cir. 2014). However, a court may grant summary judgment if "no genuine issue of material fact

16

exists as to whether" there was probable cause.  Anderson v. Perez, 2017 WL 371339, at *2 (3d Cir. Jan. 26, 2017) (citing Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997)).

Plaintiff was arrested and charged with both simple assault and aggravated assault under New Jersey law.  The New Jersey assault provision in effect in January 2016 defined these offenses as follows:

> a. Simple assault. A person is guilty of assault if he:
>
>> (1) Attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or
>
> . . .
>
> b. Aggravated assault. A person is guilty of aggravated assault if he:
>
>> (1) Attempts to cause serious bodily injury to another, or causes such injury purposely or knowingly or under circumstances manifesting extreme indifference to the value of human life recklessly causes such injury . . .

N.J.S.A. §§ 2C:12-1(a) and (b)(1).

Defendants argue that the evidence, even when viewed in the light most favorable to Plaintiff, demonstrates that Officers Marino and Kramer had probable cause to arrest and charge Plaintiff under both provisions, and accordingly they are entitled to qualified immunity.  The Court agrees.

The evidence in the record shows that the officers were dispatched to the home of Plaintiff and Jones after Jones called 9-1-1.  Upon arriving, videos recorded by the officers' body

cameras show that Marino was met by Jones, who immediately told him that Plaintiff had grabbed her by the throat in an altercation the previous evening and hit her on her head, and then stated that he had attacked her on the stairs that morning, after which she "just responded" and threw a pot of boiling water at him. (ECF 65-5, Def. Ex. B. at 10:19:00-10:20:00).

The officers spoke with both parties. Jones, over the course of multiple conversations with Marino, repeatedly told the same story: that after she had tried to follow Plaintiff into the bathroom, he had wrapped his hands around her throat, applied pressure and knocked her into the door causing damage, and that during a follow-up argument the next morning he had begun hitting her with her boots, in response to which Jones had thrown boiling water on him. Plaintiff, unsurprisingly, provided a different story, disputing Jones's claims and saying that he had never grabbed her by the throat or hit her, that the only altercation the night before had been Jones kicking in the door to the bathroom, and that the only thing he had done prior to her throwing the pot of boiling water at him was insult her mother. (Id. at 10:23:30-10:26:05); ECF No. 65-6, Def. Ex. C at 10:23:10-10:24:10). Jones, in her sworn statement given to Marino at the police station later that morning, again repeated the same allegations regarding the incidents from the previous night and that day. (ECF No. 65-7, Def. Ex. D at 01:50-04:50).

18

She further provided a photograph she had taken of what Marino
described as a small contusion above her eye that she claimed
was the result of the altercation the previous evening, (id. at
05:50-06:15; ECF No. 65-8, Def. Ex. E), and reported that she
was still having trouble swallowing, that she had been "spitting
blood" while brushing her teeth that morning, and that she was
very sore towards the back of her jaw.  (ECF No. 65-7, Def. Ex.
D at at 05:20-05:41).  Finally, Jones affirmatively stated that
she had thrown the boiling water on Plaintiff because he had
followed her into the kitchen after hitting her with her boot
and she feared for her safety.  (Id. at 07:38-07:56).

Marino and Kramer were presented with an alleged victim who
told a facially reasonable and consistent story, as well as
evidence of injuries alleged to be a result of assaults
committed by Plaintiff.  Evidence such as this certainly
qualifies to establish probable cause in domestic violence
cases.  See, e.g., Signorile v. City of Perth Amboy, et.al., 523
F. Supp. 2d 428 (D.N.J. 2007) (holding that "there is no dispute
of material fact that the arresting officers had probable cause
. . . based on the exhibition of a physical injury to [the
victim's] eye and her initial statements to the officers" and
others that the plaintiff had caused the injuries).  And the
Court similarly finds that the acts of strangulation and hitting
someone, would, if they occurred, qualify as an attempt "to

19

cause or purposely, knowingly or recklessly causes bodily
injury," and an attempt "to cause serious bodily injury to
another, or cause[] such injury purposely or knowingly or under
circumstances manifesting extreme indifference to the value of
human life recklessly causes such injury."

As the Third Circuit has held, "statements of a victim
witness are typically sufficient to establish probable cause in
the absence of '[i]ndependent exculpatory evidence or
substantial evidence of [a] witness's own unreliability' that
'outweigh[s]' the probable cause that otherwise exists."
Jecrois v. Sojak, 736 F. App'x. 343, 357 (3d Cir. 2018) (quoting
Dempsey v. Bucknell Univ., 834 F.3d 457, 477-78 (3d Cir. 2016)).
Plaintiff, for his part, essentially argues that exculpatory
evidence demonstrates that the officers did not have reasonable
basis for believing that Plaintiff had committed either crime.

To support his argument, Plaintiff relies mostly on the
following claims:

1) Marino and Kramer ignored exculpatory evidence, such as
   Plaintiff's visible burn injuries, in determining that there
   was probable cause to arrest and charge Plaintiff, and
   concocted the self-defense story with no evidence;

2) Jones never explicitly said that she had been "strangled," and
   originally denied that she had trouble breathing; and

3) Marino stated that Plaintiff appeared to be the aggressor soon
   after arriving at the scene, and that he "was going to need to
   be under arrest" before he had finished speaking to everyone
   and inspecting the apartment;

20

4) At the hearing for on the competing TRO requests, the judge granted a FRO for Plaintiff and denied Jones's.

However, these points are either refuted by the evidence, or are insufficient, even when viewed in the light most favorable to Plaintiff, to demonstrate that a factfinder could decide that it was objectively unreasonable for the officers to believe he had assaulted Jones.

First, Plaintiff has put forth no evidence that Marino and Kramer ignored exculpatory evidence.  The Court initially notes that some amount of potentially exculpatory evidence did exist: Plaintiff had burns on the side and back of his face and shoulders, Plaintiff denied Jones's story, and the damage to the bathroom door was on the outside of the door.  However, the Court finds that, even when viewed in the light most favorable to Plaintiff, this evidence did not render Marino and Kramer's belief that they had probable cause unreasonable.

As a starting point, Marino and Kramer certainly did not disregard Plaintiff's injuries.  In fact, the officers directly addressed the injuries at the scene, discussed them with Plaintiff and heard his story as to how he received them, called for medical assistance, and had Kramer accompany him to the hospital.  Marino and Kramer were entirely aware that Jones had thrown boiling water on Plaintiff, and that fact is undisputed.  Similarly, the idea that Jones threw the boiling water on him in

self-defense was not "concoct[ed]" by Marino "despite a complete
lack of evidence" — Jones had repeatedly told Marino that she
had thrown it at Plaintiff after he hit her with her boots, and
at the station explicitly said it was in self-defense and
because she feared for her safety.  (ECF No. 65-8, Def. Ex. D at
07:53-07:56).  Nor does the damage to the outside of the door
show a lack of probable cause.  Not only was that damage
consistent with Jones's story, that she had been knocked into it
in the struggle after Plaintiff grabbed her by the throat, but
even viewed in the light most favorable to Plaintiff, evidence
that Jones had herself damaged the door in trying to follow him
into the bathroom would not make it unreasonable for the
officers to believe that Plaintiff had strangled her, nor would
it require them to deem the rest of her claims unreliable.

The Third Circuit has clearly explained that "some
'unreliability or exculpatory evidence' will not 'fatally
undermine[]' probable cause otherwise established."  Dempsey,
834 F.3d at 478 (quoting Wilson v. Russo, 212 F.3d 781, 790 (3d
Cir. 2000)).  Ultimately, Plaintiff's central complaint here is
that the officers believed Jones's story that day.  However,
"[t]he probable cause inquiry looks to the totality of the
circumstances; the standard does not require that officers
correctly resolve conflicting evidence or that their
determinations of credibility, were, in retrospect, accurate."

22

Wright v. City of Phila., 409 F.3d 595, 603 (3d Cir. 2005).
Simply put, probable cause determinations do "not require the
fine resolution of conflicting evidence that a reasonable doubt
or even a preponderance standard demands." Paff v. Kaltenbach,
204 F.3d 425, 436 (3d Cir. 2000) (quoting Gerstein v. Pugh, 420
U.S. 103, 121 (1975)).  The question before the Court today is
not whether the officers were in fact correct in their
determination; it is only whether a factfinder could reasonably
decide that their determination was unreasonable given the
evidence before them.

     Similarly, Plaintiff's arguments about the specific
language used by Jones regarding the alleged grabbing of her
throat do not demonstrate a lack of probable cause.  Jones
consistently told the officers both at the scene, and then back
at the station in her sworn statement, that during an
altercation the previous evening Plaintiff had grabbed her by
her throat, and that she was still suffering throat pain and
difficulty swallowing.  At the station, she elaborated that
"while his hands were around my neck," she had actually had
trouble breathing, (ECF No. 65-7, Def. Ex. D at 05:00-05:15),
and that she had noticed while brushing her teeth that morning
that she was "spitting blood" and was very sore towards the back
of her jaw.  (Id. at 05:20-05:41).

                              23

Jones's failure to specifically use the phrase "strangle" and the lack of any outwardly visible injury on her throat does not make it unreasonable for the officers to have concluded that the event occurred and constituted aggravated assault.  Marino and Kramer had been trained to ask follow-up questions on the topic of strangulation, that not all strangulations showed outward visible signs of injury, and that reports of internal pain or injuries were substantive evidence of strangulation. (See Def. Ex. H) (Pine Hill Police Department domestic violence training presentation providing training on strangulation cases and evidence).  Plaintiff does not argue that this specific part of their training was incorrect or inappropriate, and the Court finds that, given the evidence in front of them at the time, Defendants had a reasonable basis for concluding that there was probable cause that the alleged aggravated assault had occurred.

Nor does the timing of when it was decided that Plaintiff was to be arrested and charged show a lack of probable cause, or that the officers should have known they did not have probable cause.  Marino did state at the scene that Plaintiff appeared to be the aggressor in both incidents and "he's going to need to be under arrest . . . mandatory arrest."  (ECF No. 65-5, Def. Ex. B at 10:29:40-10:31:00).  While Plaintiff repeatedly points out that there was some disagreement at the scene as to who was the aggressor in the second incident, all three officers involved in

the conversation agreed that they believed Plaintiff had been
the aggressor in the altercation the previous evening.  (ECF No.
65-5, Def. Ex. B at 10:29:40-10:31:00).  As Defendants point
out, the Domestic Violence Act provides that when officers are
faced with an alleged victim of domestic violence showing
evidence of injury and determine they have probable cause that
such domestic violence occurred, they are in a mandatory arrest
situation and do not have discretion not to make an arrest.
N.J.S.A. § 2C:25-21(a).  And by that time Marino had already
received stories from both sides, and had been straightforwardly
and consistently told by Jones that she had been grabbed by the
throat and hit in the head with a boot over the course of the
previous evening and that morning.

    The Court further notes that regardless of Marino's
statements and the officer conversation at the scene, Plaintiff
was not actually arrested or charged at that point — instead,
Marino took the additional investigative step of taking Jones to
the police station to take a sworn statement.  In that
statement, Jones once again (1) alleged that she had been
grabbed by the throat, which she stated had caused her pain, led
to her spitting blood, and had made it difficult for her to
swallow and breathe, (2) alleged that she had thrown the pot of
boiling water in self-defense after being hit by Plaintiff with
her boots and in fear for her safety, and (3) provided

additional evidence in the form of a picture showing a mark above her eye that she claimed was the result of the incident. It was only after this evidence was received by Marino that Plaintiff was arrested and charged with simple and aggravated assault.

Next, while not referenced in the Third Amended Complaint or at any point in his brief opposing summary judgment, Plaintiff's statement of undisputed material facts cites to evidence in the form of an audio recording of the court hearing on Plaintiff and Jones's competing TRO requests, where the judge granted Plaintiff a Final Restraining Order, denied Jones's request, and, in Plaintiff's description, found that she did not view Jones's story as credible. (ECF No. 71-9, Pl. Ex. J). Plaintiff, however, does not explain exactly what impact he believes this hearing or its outcome should have on the Court's probable cause analysis. Nor does the Court believe that this changes its conclusions. The task of the judge assessing the competing restraining order requests that day was to weigh the evidence and determine what she believed actually happened on the evening and morning in question. As described above, however, the truth as to what actually happened is not relevant to the matter before this Court — the only relevant question is whether, on January 23, 2016, with the evidence available to them at that time, it was reasonable for Marino and Kramer to

believe that Plaintiff had assaulted Jones.  Having reviewed the
evidence in the record, the Court finds that there is no genuine
dispute of material fact as to whether that conclusion was at
least reasonable, and that Defendants therefore did have
probable cause.

Finally, Plaintiff also briefly raises, for the first time,
an argument that Officer Marino omitted material information
from his Statement of Probable Cause — specifically, that he did
not reference Plaintiff's burn injuries.  The Court first notes
that the Third Amended Complaint does not make any claims
regarding the sufficiency of the Complaint-Warrant issued for
his arrest.  Regardless, such a claim fails here.  To prevail on
this claim, Plaintiff must make two showings: "first, that the
officer, with at least a reckless disregard for the truth, made
false statements or omissions that create[d] a falsehood in
applying for a warrant, and second, that those assertions or
omissions were material, or necessary, to the finding of
probable cause." Dempsey, 834 F.3d at 468-69 (quoting Wilson,
212 F.3d at 786-87) (internal quotations omitted).  However, as
the Court has already explained above, probable cause existed
for Plaintiff's arrest based on all of the evidence available to
Officer Marino on January 23, 2016.  Accordingly, the addition
of a reference to Plaintiff's own injuries could not have

27

changed the municipal court's probable cause assessment, and Plaintiff cannot succeed on this claim.

The Court, of course, does not mean to say that Marino and Kramer's judgment and assessment of the evidence was correct, nor has it attempted to make such a determination.  Defendants were faced with an individual who had called the police, repeatedly told them a consistent story that Plaintiff had both strangled and hit her, prompting her to respond in self-defense, and presented evidence of injuries related to those alleged assaults.  The Court simply finds that given this evidence, even when viewed in the light most favorable to Plaintiff, a reasonable factfinder could not find that it was unreasonable for the officers to believe that Plaintiff had committed both assaults.

Accordingly, probable cause existed as a matter of law to arrest and charge Plaintiff for both simple and aggravated assault.  Even if it did not, the evidence was certainly sufficient to provide Marino and Kramer with an objectively reasonable, good faith belief that it did.  Therefore, Plaintiff has failed to show any constitutional violations, and both officers are entitled to both qualified and specific immunity. Summary judgment will be granted in their favor on Plaintiff's false arrest and malicious prosecution claims.

## 2. **Plaintiff's 14th Amendment Claims**

Plaintiff similarly brings a § 1983 claim for selective enforcement and "civil rights violations" in violation of the Fourteenth Amendment's Equal Protection Clause, alleging that he was arrested and charged only because of his sex. As explained above, Defendants are entitled to qualified immunity on each of Plaintiff's § 1983 claims, and accordingly summary judgment must be granted on these claims as well.

However, the Court also notes that Plaintiff has entirely failed to oppose summary judgment on these claims. In fact, Plaintiff's opposition brief does not appear to even address or reference these claims or Defendants' arguments for summary judgment on them. Accordingly, even were Defendants not entitled to qualified immunity, the Court would find summary judgment on these claims unopposed, and that, for the reasons explained in its analysis of Plaintiff's sex discrimination claim below, the Plaintiff has also failed to provide sufficient evidence to support his claims at this stage.

## 3. **Plaintiff's Claims against the Borough of Pine Hill and the Borough of Pine Hill Police Department**

Plaintiff also alleges § 1983 claims against both the Borough of Pine Hill and the Borough of Pine Hill Police Department based on his arrest and charging. These claims fall under the theory of liability outlined in Monell v. New York

29

<u>City Dep't of Social Services</u>, 436 U.S. 658 (1978), which held
that municipalities and local governments can be liable for the
constitutional violations of their employees when a plaintiff
can demonstrate that the employees' actions were pursuant to a
policy or custom of the municipality itself.  <u>Id</u>. at 694; <u>Watson</u>
<u>v. Abington</u>, 478 F.3d 144, 155 (3d Cir. 2007).

　　　The Court first finds that all of Plaintiff's claims
against the Borough of Pine Hill Police Department fail because
Plaintiff has sued the Police Department in conjunction with the
Borough of Pine Hill itself, and "[i]n New Jersey, a municipal
police department is not an entity separate from the
municipality."  <u>Florentino v. City of Newark</u>, No. 2:19-cv-21055
(BRM) (SCM), 2020 WL 5105291, at *4 (Aug. 31, 2020) (citing
<u>Trapp v. New Jersey</u>, No. 17-10709, 2018 WL 4489680, at *6
(D.N.J. Sept. 19, 2018); N.J. Stat. Ann. § 40A:14-118 (stating
that that New Jersey police departments are "an executive and
enforcement function of municipal government")).  Further, "[i]n
Section 1983 actions, police departments cannot be sued in
conjunction with municipalities, because the police department
is merely an administrative arm of the local municipality, and
is not a separate judicial entity."  <u>Padilla v. Twp. of Cherry</u>
<u>Hill</u>, 110 F. App'x 272, 278 (3d Cir. 2004) (quotation and
citation omitted).

Second, because the Court has already determined that
Plaintiff's underlying constitutional claims for false arrest,
malicious prosecution, and selective enforcement fail and
summary judgment must be granted against them, Plaintiff cannot
maintain his parallel <u>Monell</u> claims against the Borough under
§ 1983.  <u>See</u> <u>Marable v. West Pottsgrove Twp.</u>, 176 F. App'x. 275,
283 (3d Cir. 2006) (stating that "a municipality may not incur
<u>Monell</u> liability as a result of the actions of its officers when
its officers have inflicted no constitutional injury"); <u>Williams</u>
<u>v. West Chester</u>, 891 F.2d 458, 467 (3d Cir. 1989) (stating that
a municipal defendant "cannot be vicariously liable under Monell
unless one of [its] employees is primarily liable under section
1983 itself").  Accordingly, summary judgment will also be
granted on all claims against the Borough of Pine Hill and the
Police Department.

**B. <u>Plaintiff's NJLAD Sex Discrimination Claim</u>**

Plaintiff next alleges that his arrest constituted sex
discrimination in violation of the NJLAD.  As the Court found
above, Defendants are entitled to specific immunity against
civil liability under state law for claims related to their
actions in arresting Plaintiff pursuant to the Domestic Violence
Act.  Even were they not entitled to immunity, the Court finds
that Plaintiff has also failed to meet his evidentiary burden at
the summary judgment stage.

31

The NJLAD provides that "[a]ll persons shall have the opportunity ... to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation ... without discrimination because of ... sex." N.J.S.A. 10:5-4. "It is well settled that the discriminatory acts of law enforcement officers are considered public accommodation discrimination under the NJLAD." Vandegrift v. Bowen, No. 07-2623, 2009 WL 1913412, at *3 (D.N.J. June 30, 2009) (citing Ptaszynski v. Uwaname, 853 A.2d 288 (N.J. Sup. Ct. App. Div. 2004)). For a sex discrimination claim, the plaintiff must (1) "demonstrate that she is a member of a protected class"; (2) "show that the defendant's actions were motivated by discrimination"; and (3) demonstrate that "others not within the protected class did not suffer similar adverse ... actions." Partovi v. Felician Coll., No. A-1961-09T1, 2011 WL 867275, at *7-8 (N.J. Super. Ct. App. Div. Mar. 15, 2011); see also Brooks v. Codispoti, No. 12-5884, 2015 WL 9462086, at *10 (D.N.J. Dec. 28, 2015) ("Courts in the District of New Jersey have held that violations of the public accommodation provisions of the NJLAD may be assessed under the same standards as Equal Protection Claims in federal anti-discrimination law.").

Plaintiff has failed to provide any substantive argument or evidence to support his claim that he was arrested because of his sex. His brief confusingly argues that he "has adequately

32

pled that he was treated differently because of his sex,"
despite the fact that this action is beyond the motion to
dismiss stage; in opposing summary judgment, claims must be
supported by actual evidence in the record.  Fed. R. Civ. P.
56(c)(1).  The only evidence Plaintiff has put forward to show
that sex was the basis for his arrest are slides from a Domestic
Violence Training Presentation given to Pine Hill officers.  The
specific training slides that Plaintiff cites to do nothing more
than provide statistics regarding domestic violence, including
the number of women who suffer from it, and occasionally use the
pronoun "he" when referring to the abuser and "she" when
referring to the victim.

        This evidence, on its own, not only does not demonstrate
any policy of arresting men over women, it provides no evidence
that Plaintiff's sex was the basis for his arrest.  Plaintiff
presents no argument that the statistics in question are wrong,
or that it is improper to provide officers with relevant
statistics and information regarding domestic violence;
similarly, the occasional use of specific pronouns in training
presentations that also repeatedly say "he or she" or use the
phrase "Victim" in other places, simply does not demonstrate sex
discrimination, nor has Plaintiff provided any argument or
support for this claim besides the conclusory assertion that it
does.  Plaintiff has put forth no other evidence to show that

his sex was even considered by the officers in deciding to arrest and charge him.  The Court finds that Defendants have therefore demonstrated that there is no genuine dispute of material fact as to this claim, and summary judgment will be granted for this reason as well.

**C. Plaintiff's Claim for Equitable Relief**

Finally, Plaintiff seeks equitable relief in the form of a declaration that Defendants' actions in arresting and charging him violated his federal and state civil rights.  As the Court has already determined that Defendants did not violate Plaintiff's civil rights and that his underlying claims fail, so too does his claim for equitable relief.

## Conclusion

For the reasons expressed above, Defendants' motion for summary judgment (ECF No. 65) will be granted as to each of Plaintiff's claims.

An appropriate Order will be entered.


Date: November 18, 2020                    /s Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.

34